RENDERED: MAY 2, 2025; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-0294-MR

COMMONWEALTH OF KENTUCKY                         APPELLANT

v.                  APPEAL FROM ADAIR CIRCUIT COURT
HONORABLE DAN KELLY, SPECIAL JUDGE
ACTION NO. 23-CR-00063

BENJAMIN E. SHROYER                             APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: THOMPSON, CHIEF JUDGE; CALDWELL AND L. JONES, JUDGES.

CALDWELL, JUDGE: The Commonwealth of Kentucky ("the Commonwealth") appeals from the dismissal of an indictment for possession of illicit drugs and paraphernalia pursuant to KRS[1] 218A.133, also known as the Medical Amnesty Statute. We affirm.

---

[1] Kentucky Revised Statutes.

# FACTS

During all relevant trial court proceedings, KRS 218A.133 provided in pertinent part:[2]

> (2) A person shall not be charged with or prosecuted for a criminal offense prohibiting the possession of a controlled substance or the possession of drug paraphernalia if:
>
> > (a) In good faith, medical assistance with a drug overdose is sought from a public safety answering point, emergency medical services, a law enforcement officer, or a health practitioner because the person:
> >
> > > 1. Requests emergency medical assistance for himself or herself or another person;
>
> . . .
>
> > (b) The person remains with, or is, the individual who appears to be experiencing a drug overdose until the requested assistance is provided; and
> >
> > (c) The evidence for the charge or prosecution is obtained as a result of the drug overdose and the need for medical assistance.
>
> (3) The provisions of subsection (2) of this section shall not extend to the investigation and prosecution of any other crimes committed by a person who otherwise qualifies under this section

---

[2] A few months after the trial court entered its order granting the motion to dismiss, KRS 218A.133 was amended effective July 15, 2024.

Benjamin Shroyer ("Shroyer") was arrested by police shortly after Shroyer took an individual to the emergency room for treatment of a drug overdose.

According to the arrest citation, officers went to Shroyer's home "to do a knock and talk due to an overdose that took place at that house." (Record on Appeal ("R."), p. 44.) The citation noted Shroyer had brought a female to the hospital for an overdose but left the hospital before police could speak with him. It stated the officers smelled marijuana and saw a clear bag with a white crystalline substance in plain view through an open window of a car when they arrived at Shroyer's home.

Also, according to the citation, after the officers contacted the County Attorney to request a warrant, Shroyer came out of his house and was detained by the officers, who read him his *Miranda*[3] rights. Shroyer allegedly consented to a search of his home and vehicle, and officers allegedly discovered marijuana, "spice" (a synthetic drug), pills, drug paraphernalia and a crystalline substance. Shroyer was arrested and stated he had smoked methamphetamine with two females before the overdose occurred – again, according to the arrest citation.

---

[3] *See generally Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

The arrest citation listed charges including trafficking and possession of controlled substances and drug paraphernalia. Though Shroyer was not indicted for trafficking, he was indicted for alleged possession of methamphetamine, marijuana, synthetic drugs, and drug paraphernalia.

Shroyer filed a motion to dismiss the indictment. He attached to his motion exhibits including the arrest citation, a 911 call log, and photographs which the Commonwealth alleged were of Shroyer and his vehicle at the hospital. Shroyer asserted the indictment violated KRS 218A.133 because he had taken the overdosing individual to the emergency room and because evidence for the charges was obtained due to the overdose and need for medical assistance.

He also noted the arrest citation recited that officers came to his home to talk with him **due to** the overdose after he took the overdosing individual to the hospital and left before police could talk with him. He pointed out the statute did not require that one remain with the overdosing individual until police could arrive for questioning. He also asserted that as a direct result of his taking the overdosing individual to the hospital for treatment, officers were dispatched to the hospital and then went to his home and conducted a search which yielded evidence of possession. In other words, "but for the overdose," officers would not have gone to Shroyer's home and discovered the evidence supporting the possession charges.

-4-

He alleged the officers did not come to his home to investigate a separate criminal offense.

Shroyer contended that given how the evidence supporting the possession charges was obtained, his prosecution on possession charges would defeat the purpose of the statute – "to avoid the chilling effect that fear of prosecution has on an individual who might otherwise seek emergency medical assistance during a perceived drug overdose." (R., p. 50.)

The Commonwealth filed a response to the motion to dismiss. It asserted that Shroyer did not remain with the overdosing individual until assistance was provided. It specifically noted it was unclear whether Shroyer had remained at the hospital until treatment was initiated or completed. The Commonwealth also contended that even if Shroyer remained at the hospital until assistance was provided, immunity did not extend to anything which occurred after Shroyer left the hospital. Moreover, it argued the evidence supporting the indictment was not obtained as a result of the drug overdose and the need for medical assistance. Instead, it submitted the evidence was obtained due to investigation of criminal activity which occurred at Shroyer's home – away from the hospital where the need for medical assistance was being addressed.

At the hearing on the motion to dismiss, both parties stated that the motion was ripe for a hearing based on the mostly undisputed facts. The parties

agreed that Shroyer had taken the overdosing individual to the hospital for medical assistance and had left before police arrived to question him there. Shroyer, by counsel, conceded that he had not stayed at the hospital until the overdosing individual was discharged. His counsel also suggested that if there were factual issues about whether Shroyer had remained at the hospital until the requested assistance was provided, that perhaps an evidentiary hearing was needed. However, the Commonwealth did not request an evidentiary hearing or ask the trial court to resolve whether Shroyer had remained until the requested assistance was provided. Instead, it argued that even if he had remained until the requested assistance was provided, that the "cloak of immunity" did not extend past his leaving the hospital.

The parties and the trial court perceived there was no factual issue to resolve; instead, only a legal issue remained for the trial court to resolve. The trial judge orally stated that he accepted the defense argument for immunity and later entered a written order dismissing the indictment. The Commonwealth filed a timely appeal.

Further facts will be provided as necessary as we consider the issues raised on appeal.

# ANALYSIS

## We Confine Our Review to Those Issues Properly Preserved for Appeal

Most of the issues raised on appeal are properly preserved for appeal since they were clearly raised to the trial court. *See Koteras v. Commonwealth*, 589 S.W.3d 534, 540 (Ky. App. 2018) ("For this Court to have authority to review a claim, the trial court must have had an opportunity to correct its alleged error."). The parties' briefs do not directly address whether the trafficking investigation issue raised by the Commonwealth was properly preserved for review, however.

Though Shroyer was not indicted for trafficking, the Commonwealth contends he is not immune from being prosecuted for possession because police were conducting a trafficking investigation. It quotes KRS 218A.133(3) which states that KRS 218A.133(2)'s provisions: "shall not extend to the investigation and prosecution of any other crimes committed by a person who otherwise qualifies under this section."[4]

---

[4] The Commonwealth points out that trafficking is statutorily defined to include giving someone drugs without receiving consideration in exchange as well as selling drugs for money. *See* KRS 218A.010(49), KRS 218A.010(56)-(57).

The Commonwealth also points out the arrest citation indicated Shroyer was charged with trafficking. And Shroyer admits he was originally arrested on trafficking charges (despite never being indicted for trafficking). But he contends nothing in the record indicates why a trafficking charge was included on the citation. He also asserts the officers never stated the investigation was one into drug trafficking.

At the beginning of the appellant brief argument, the Commonwealth generally contends the trial court erred in dismissing the indictment based upon a determination that officers could not use information "stemming from the treatment of an overdose victim in furtherance of a narcotics investigation." Next, the Commonwealth argues "the Commonwealth properly preserved this issue for appellate review by arguing to the trial judge that Shroyer was not immune from prosecution under KRS 218A.133 because he did not remain at the hospital and any immunity did not extend to the investigation that ensued after Shroyer left." However, the Commonwealth does not state that it raised any issue about whether immunity could not arise pursuant to KRS 218A.133(3) based on the officers' allegedly conducting a **trafficking** investigation.

Moreover, although Shroyer does not explicitly challenge preservation of this issue in his brief, "an appellate court should determine for itself whether an issue is properly preserved" and the Court is not bound by the parties' views about preservation. *Gasaway v. Commonwealth*, 671 S.W.3d 298, 311 (Ky. 2023).[5]

Having carefully reviewed the Commonwealth's written response to the motion to dismiss and the hearing on the dismissal motion, no issue relating to

---

[5] We recognize that *Gasaway* indicates that one does not necessarily have to make identical arguments to the trial court to preserve an issue for appeal. Arguments simply support issues, claims or allegations of error and "appellate courts review issues, not arguments." 671 S.W.3d at 313 (internal quotation marks omitted). Nonetheless, if an issue or alleged error was not raised to the trial court, the issue was not properly preserved and must be considered forfeited on appeal. *Id*. at 314.

an alleged trafficking investigation was raised to the trial court. The Commonwealth quoted KRS 218A.133(3) in its response to the dismissal motion, but it did not allege or discuss any trafficking investigation in its written response or at the hearing before the trial court. Therefore, the issue was not properly preserved and so we decline to resolve it. *See Gasaway*, 671 S.W.3d at 315 (declining to reach issue of whether Section 10 of the Kentucky Constitution provided broader protection than the Fourth Amendment since the issue about Section 10 protection was not raised to the trial court and questions about whether a search was reasonable under KY. CONST. § 10 or under the Fourth Amendment are "discrete legal issues"). Moreover, the Commonwealth has not requested palpable error review, so we decline to review the issue for palpable error as defined by RCr[6] 10.26. *See Koteras*, 589 S.W.3d at 540 ("[W]e lack authority to review unpreserved issues unless palpable error review is requested.").

Having declined to resolve this specific issue about an alleged trafficking investigation, which was not raised to the trial court, we now shift our attention to those issues which were raised to the trial court to resolve these preserved issues under the applicable standard of review.

---

[6] Kentucky Rules of Criminal Procedure.

## Standard of Review

We review *de novo* (without deference) the trial court's granting of the motion to dismiss the indictment based upon its interpretation of KRS 218A.133. *Wilson v. Commonwealth*, 628 S.W.3d 132, 140 (Ky. 2021).

### Trial Court Properly Interpreted Statute Pursuant to Principles Set Forth in Binding Precedent from our Supreme Court

The Commonwealth contends police have a duty to investigate overdoses, to determine who may have supplied controlled substances, and to determine if additional criminal activity may be occurring. We do not dispute this contention. Moreover, KRS 218A.133 does not prohibit investigations into overdoses. Instead, relevant to these facts, the statute simply prohibits **charging** and **prosecution** for possession offenses when one has sought medical assistance for another's overdose, when one has remained with the overdose victim until the requested assistance is provided, and when the evidence supporting the charges was obtained as a result of the overdose and need for medical treatment. KRS 218A.133(2).

As the Commonwealth points out, investigations into overdoses were conducted yet immunity was held not to arise in *Commonwealth v. Letner*, 678 S.W.3d 101, 102 (Ky. App. 2023), and in *Commonwealth v. Kenley*, 516 S.W.3d 362, 363 (Ky. App. 2017). However, immunity did not arise in these cases because the defendants were not prosecuted for possession but instead for other

crimes for which KRS 218A.133 did not expressly provide immunity at the relevant times. For example, Kenley was indicted for promoting contraband, *id*. at 363-65, and Letner was indicted for trafficking. *Letner*, 678 S.W.3d at 103-04.

Unlike Letner and Kenley, however, Shroyer was not charged with trafficking or any crime other than possession of controlled substances and drug paraphernalia. Moreover, this Court did not discuss in *Letner* and *Kenley* whether the evidence supporting the charges was obtained **as a result of** the overdose and need for medical treatment. Instead, our analysis hinged on the fact KRS 218A.133 did not expressly provide immunity for the offenses with which these defendants were charged. We also noted in *Letner* that the legislature could have easily added language to extend KRS 218A.133(2) immunity to trafficking offenses if it wanted to do so. 678 S.W.3d at 103.[7]

The Commonwealth contends that the trial court erred in dismissing the indictment based on an overly broad reading of the statute and a failure to apply clear terms in the statute. On the other hand, Shroyer contends the trial court properly dismissed the indictment and construed KRS 218A.133 in accordance with our Supreme Court's guidance in *Wilson*, which states:

---

[7] Several months after *Letner* was rendered, the legislature added language to KRS 218A.133 extending immunity "for an offense punishable under KRS 218A.1412(3)(c)" (Trafficking in fentanyl or fentanyl derivatives which resulted in a person's death), provided other requirements were met. *See* KRS 218A.133(2) (as amended effective July 15, 2024).

we are obliged to construe KRS 218A.133 under certain well-established principles of statutory interpretation. First and foremost, this Court must always bear in mind that "[a]ll statutes of this state shall be liberally construed with a view to promote their objects and carry out the intent of the legislature[.]" Therefore, when interpreting a statute, our responsibility is to give effect to the intent of the General Assembly. "We derive that intent, if at all possible, from the language the General Assembly chose, either as defined by the General Assembly or as generally understood in the context of the matter under consideration." In addition, we must assume that the General Assembly intends that a statute be read as a whole such that each of its constituent parts have meaning. And, in interpreting a statute, we must assume that the General Assembly did not intend for an interpretation that would lead to an absurd result.

In addition, we acknowledge the Commonwealth's inclusion of case law from other states regarding how those states interpret their respective Medical Amnesty Statutes. However, we feel resorting to other states' cases for extrinsic aid is unnecessary, as KRS 218A.133 is sufficiently unambiguous.

*See Wilson*, 628 S.W.3d at 140 (footnotes omitted).[8]

---

[8] The Commonwealth contends that Kentucky Court of Appeals precedent calls for KRS 218A.133 to be narrowly construed, citing *Letner*, 678 S.W.3d at 102, and *Kenley*, 516 S.W.3d at 363. To the extent that precedent from this Court calls for narrow construction of this statute and thus conflicts with our Supreme Court's directive to liberally construe statutes to achieve their purposes, *see Wilson*, 628 S.W.3d at 140, precedent from our Supreme Court must prevail over conflicting precedent from this Court. *See* Supreme Court Rule ("SCR") 1.030(8)(a) ("The Court of Appeals is bound by and shall follow applicable precedents established in the opinions of the Supreme Court and its predecessor court."). However, we submit that *Letner* and *Kenley* are consistent with *Wilson*'s direction that statutes be liberally construed to achieve their intent as reflected in the clear language of a statute – since KRS 218A.133(2) explicitly calls for immunity from being charged with or prosecuted for possession offenses (provided other requirements are met), but not for immunity from charging or prosecution of other offenses not mentioned therein.

In his statement of facts, Shroyer also points out that the trial court's order granting the motion to dismiss quotes *Wilson* regarding the intent of KRS 218A.133: "The purpose of the statute is to avoid the chilling effect that fear of prosecution has on an individual that might otherwise seek emergency medical assistance during a perceived drug overdose." *See* 628 S.W.3d at 143. (R., p. 69.)

Shroyer also notes the trial court determined that not dismissing the indictment under the facts here would frustrate this statutory purpose:

> On the face of the [arrest] citation, it is clear to the Court that but for the overdose, officers would not have been at [Shroyer's home] where the evidence which forms the basis of Mr. Shroyer's charges was seized. To allow officers to use the suspected drug overdose and defendant's [Shroyer's] actions in appropriately seeking emergency medical assistance as a basis for further investigating the defendant and charging him with possession is precisely the conduct prohibited by the statute and promotes the chilling effect which KRS 218A.133 specifically seeks to avoid.

(R., p. 69.) Shroyer asserts the trial court properly dismissed the indictment because but for the overdose and request for medical assistance, the officers would not have come to his home where they seized the evidence which supported the possession charges.

In its reply brief, the Commonwealth contends that Shroyer's "but for" argument ignores the fact that the words "but for" are not in KRS 218A.133.[9] It also asserts courts must not add words to a statute, citing *Lee v. Kentucky Department of Corrections*, 610 S.W.3d 254, 262 (Ky. 2020), which states: "when the statute is unambiguous, courts are not free to insert words or add a provision even if it may be just or desirable to do so."

Despite noting courts should not add language to an unambiguous statute which is not already there and insisting that "as a result of" does not mean "but for," the Commonwealth argues in its reply brief, "KRS 218A.133 requires the request for or obtainment of medical assistance be *the cause* of the discovery of the evidence." However, KRS 218A.133(2)(c) does not state the evidence must be "*the cause* of the discovery of the evidence" or the *sole cause* the evidence was obtained. Nor does it state the overdose and request for medical treatment must be the **proximate cause** of the discovery of the evidence.[10] Instead, KRS

_____

[9] Oddly, the Commonwealth did not point to the lack of "but for" language in the statute in its initial appellant brief despite the trial court using this language in its order granting the dismissal. However, the Commonwealth did respond to Shroyer's argument in his appellee brief that the trial court properly granted dismissal because the evidence would not have been obtained "but for" the overdose and request for treatment. Thus, although some authority indicates that a reply brief should generally not discuss new grounds for reversal, we construe the Commonwealth's "but for" argument as rebuttal. *See generally Milby v. Mears*, 580 S.W.2d 724, 727-28 (Ky. App. 1979).

[10] The Commonwealth cites precedent from another jurisdiction construing *as a result of* in a similar medical amnesty statute to mean something other than "but for" causation. *See Florida v. Waiters*, 347 So. 3d 533, 540 (Fla. Dist. Ct. App. 2022). The Florida Court of Appeals ultimately determined that *as a result* in the Florida medical amnesty statute meant "proximate

-14-

218A.133(2) simply requires: "The evidence for the charge or prosecution is obtained **as a result of** the drug overdose and the need for medical assistance." (Emphasis added.) It would be improper for us to add terms to this statutory provision. Moreover, *as a result of the drug overdose and need for medical assistance* simply means that the overdose and need for treatment were part of the factors leading to the discovery of evidence, not necessarily that the overdose and need for treatment are the sole, proximate or primary causes of the evidence being obtained.[11]

---

cause" based in part on the terms of other statutory provisions in the Florida Comprehensive Drug Abuse Prevention and Control Act. *See id* at 539. *See also generally Missouri v. Smith*, 698 S.W.3d 178, 183 (Mo. Ct. App. 2014).

Despite any similarity in the language of medical amnesty statutes in Florida or Missouri, other state courts' interpretations of their own state's statutes are not binding upon us as we construe Kentucky's medical amnesty statute. Thus, we decline to address such precedent from other jurisdiction any further. *See also Wilson*, 628 S.W.3d at 140 ("[W]e acknowledge the Commonwealth's inclusion of case law from other states regarding how those states interpret their respective Medical Amnesty Statutes. However, we feel resorting to other states' cases for extrinsic aid is unnecessary, as KRS 218A.133 is sufficiently unambiguous."). *Wilson* did not construe the *as a result of* language in KRS 218A.133(2)(c) but instead resolved whether 911 calls reporting passed-out occupants in parked vehicles amounted to requests for medical assistance for suspected overdoses pursuant to KRS 218A.133(1)(a) and KRS 218A.133(2). *See* 628 S.W.3d at 145. Nonetheless, its reasoning for declining to follow other states' precedent construing other states' medical amnesty statutes aptly applies here as well.

[11] *See* general definition of *result* (noun): "something that results as a consequence, issue, or conclusion" or "something obtained by calculation or investigation[.]" *See also* general definitions of *cause* (noun) including: "something that brings about an effect or result." MERRIAM-WEBSTER, https://www.merriam-webster.com/ (last accessed Apr. 16, 2025). *See also* definitions of *result, but-for cause, cause, direct cause, proximate cause, etc*. in BLACK'S LAW DICTIONARY (12th ed. 2024) (notably defining *result* as: "A consequence, effect, or conclusion" and defining *cause* as: "Something that produces an effect or result").

-15-

KRS 218A.133(2)(c) simply requires that the evidence be obtained "as **a** result of the drug overdose and the need for medical assistance." (Emphasis added.) Since the statute must be liberally construed to achieve its purpose and its clear terms must be accorded their plain meanings,[12] we discern no error in the trial court's conclusions that KRS 218A.133's requirements for immunity were met and that it must therefore grant the motion to dismiss.

Having rejected the Commonwealth's argument – first made in the reply brief – that *as a result of* means being the sole cause of or only a direct cause of with no break in the chain of causation,[13] we next address its argument that "the cloak of immunity" no longer applied once Shroyer left the hospital.

### We Reject the Argument that the Cloak of Immunity Automatically Disappears Immediately After Leaving Hospital

Beginning with its written response to the motion to dismiss and its arguments at the trial court hearing on this motion, the Commonwealth has consistently argued that any "cloak of immunity" which arose when Shroyer took the overdose victim to the hospital did not "follow" him when he left the hospital.

---

[12] *See Wilson*, 628 S.W.3d at 140.

[13] The Commonwealth argues in its reply brief that it is not enough for a request for medical assistance for an overdose to start "the causal chain of events that led to the discovery of the evidence." We also note the Commonwealth did not make the exact same detailed arguments about the type of causation connoted by the term *as a result of* to the trial court, though the Commonwealth raised to the trial court the general issue of whether the evidence was obtained as a result of the officers' observations and investigation at Shroyer's home rather than as a result of the overdose and need for medical treatment.

The Commonwealth emphasizes that Shroyer left the hospital and did not stay there to speak with police about the overdose.[14] The Commonwealth also points out the overdosing individual received medical assistance at the hospital, not at Shroyer's house. It also asserts the drugs were found during an investigation which ensued **after** the medical assistance was sought.

The Commonwealth suggests that maybe Shroyer would have had immunity if the controlled substances or paraphernalia were found on him or in his vehicle before he left the hospital. It argued to the trial court that immunity from prosecution was limited in time and did not extend to anything which occurred after Shroyer left the hospital.

---

[14] Nonetheless, the Commonwealth has not challenged on appeal the trial court's determination that Shroyer had remained at the hospital until the requested assistance was provided. The requirement that a person seeking medical assistance for another person's suspected overdose remain until the requested assistance is provided is important "as a person who is present when emergency responders arrive will likely be able to provide information that a potentially unconscious overdose victim cannot, thus facilitating treatment and presumably increasing the odds of a positive medical outcome." *Logsdon v. Commonwealth*, 601 S.W.3d 477, 480-81 (Ky. App. 2020) (quoting *Allen v. Commonwealth*, No. 2017-CA-000389-MR, 2018 WL 4523207, at *3 (Ky. App. Sep. 21, 2018) (unpublished)).

Moreover, based on photographs the Commonwealth provided in discovery showing Shroyer inside the hospital which were attached to the motion to dismiss, the trial court was satisfied that treatment had at least been initiated before Shroyer left. So, it determined Shroyer remained until the requested assistance was provided. *See* KRS 218A.133(2)(b). The Commonwealth did not ask the trial court for an evidentiary hearing to resolve any factual issues about whether Shroyer remained until assistance was provided. Instead, the Commonwealth argued to the trial court that even if Shroyer stayed until assistance was provided, "the cloak of immunity" did not follow him after he left the hospital.

-17-

Despite these arguments, KRS 218A.133(2)(c) does not necessarily require that the evidence be obtained at the time and place where medical assistance is sought. Instead, it simply requires that the evidence be obtained "as a result of the drug overdose and the need for medical assistance." It is not our job to add additional requirements to the statute.

We recognize that KRS Chapter 218A.133 does not broadly de-criminalize all acts related to substance abuse simply because one seeks medical assistance for an overdose (on behalf of oneself or others)[15] – despite some scholars' suggesting that onerous requirements in medical amnesty statutes and courts' overly narrow construction of such statutes may thwart goals of encouraging prompt reporting of overdoses and thus reducing overdose deaths.[16]

---

[15] *See generally Letner*, 678 S.W.3d 101; *Kenley*, 516 S.W.3d 362; *Wilson*, 628 S.W.3d 132. *See also* KRS 218A.005 (legislative findings and declarations indicating Kentucky law uses both criminal prosecutions and treatment alternatives to deal with problems posed by substance abuse):

> (1) The regulation of controlled substances in this Commonwealth is important and necessary for the preservation of public safety and public health; and
>
> (2) Successful, community-based treatment can be used as an effective tool in the effort to reduce criminal risk factors. Therapeutic intervention and ongoing individualized treatment plans prepared through the use of meaningful and validated, research-based assessment tools and professional evaluations offer a potential alternative to incarceration in appropriate circumstances and shall be used accordingly.

[16] *See generally* Scott Koven, *Deserving Life: How Judicial Application of Medical Amnesty Laws Perpetuates Substance Use Stigma*, 80 WASH. & LEE L. REV. 1745 (2023); Thomas E. Griner, PhD, JD, MPP *et. al.*, *State-by-State Examination of Overdose Medical Amnesty Laws*, 40 J. LEGAL MED. 171 (2020).

Nonetheless, the trial court properly construed the words of KRS 218A.133 according to their plain meaning and properly dismissed the indictment based on the largely undisputed facts which the parties brought to its attention. Again, no alleged trafficking investigation was brought to the trial court's attention.

In short, we discern no reversible error in the trial court's dismissal of the indictment on possession charges based upon its interpretation of KRS 218A.133 considering the record before us.

Further arguments raised by the parties which are not discussed herein have been determined to lack merit or relevancy to our resolution of this appeal.

## CONCLUSION

For the reasons stated herein, we AFFIRM the judgment of the Adair Circuit Court.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Russell Coleman
Attorney General of Kentucky

Courtney J. Hightower
Assistant Attorney General
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Cameron C. Griffith
Lebanon, Kentucky